SECURITY MUTUAL LIFE INSURANCE COMPANY, APPELLEE, V. HERPOLSHEIMER BUILDING COMPANY, APPELLANT.

271 N. W. 343

FILED FEBRUARY 5, 1937. No. 29792.

*John H. Comstock,* for appellant.

*Fred C. Foster, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and RAPER and CHAPPELL, District Judges.

PAINE, J.

This is a foreclosure action, in which the district judge entered a decree on December 18, 1933, finding the amount due upon the mortgage that day to be $121,229.84, with interest at 6 per cent. from that date, together with costs. It was agreed by the parties that the issuance of the order of sale should be stayed for nine months.

The defendants had made application for a moratorium until March 1, 1935, under House Roll No. 600, ch. 65, Laws 1933. On October 25, 1934, plaintiff filed motion to confirm the sale made by the sheriff on October 23, 1934, and that sheriff's deed issue.

On November 8, 1934, after a hearing on the application for a moratorium, it was ordered by the district judge that the foreclosure proceedings be stayed until March 1, 1935; further, that the property remain in the possession of the receiver, E. B. Stephenson, appointed June 8, 1933, and that the rents and income from said premises be applied (1) to cost of repairs, (2) to cost of operation of the building, (3) to the payment of the taxes, and that the proceeds above such sums be paid the Herpolsheimer Building Company to the extent of $100 a month, and any net rentals above those amounts be applied on the plaintiff's mortgage, first to the payment of the interest, and then to principal.

On June 26, 1935, the plaintiff filed a motion to set aside the moratorium and to confirm the sale, alleging that House Roll No. 600, ch. 65, Laws 1933, had expired, and that House Roll No. 1, ch. 41, Laws 1935, was unconstitutional and void.

On September 23, 1935, the defendants filed objections to, and a showing in resistance of, the motion to set aside the moratorium, supporting the same by the affidavits of many parties, and the cause came on for hearing September 30, 1935, before the district judge, who entered an order finding that there was then due upon the decree $134,161.03, and that, in addition thereto, there were unpaid taxes and special assessments aggregating the sum of $19,027.18. The court further found that the receiver had spent $7,258.18 in preserving the property, which amount was advanced by the plaintiff, and that the total amount due from the defendants was $160,446.39, and that the property did not exceed in value the sum of $100,000; that of the collateral security put up with the plaintiff, $7,500 of second mortgage bonds of the Lincoln Improvement Company were in default in the payment of interest, and a real estate mortgage of $12,000, also held as collateral, was in foreclosure, and taxes were unpaid on the security therefor in the amount of $2,000. The court further found that the receiver had received rents of only $1,360, and that the bid of $110,000 made at the sale of said premises was regular, and that said sum was more than the property was worth, and that said sale should be confirmed. The court decreed that the moratorium order, which had been continued in force by a general order of the district court without any hearing, should be set aside and held for naught; that said sale be confirmed and the sheriff directed to place the plaintiff in possession. The motion for a new trial was overruled.

The defendants set out a number of errors for reversal of the judgment of the lower court, the principal ones being that the judgment entered is contrary to law, and is against the weight and preponderance of the evidence. The

defendants' evidence disclosed that the H. H. Herpol-
sheimer Company, while operating a department store in
this property some years ago, did at one time a gross busi-
ness in the neighborhood of $600,000 a year, and members
of the Herpolsheimer family testified that the mortgaged
real estate was now of a value of from $200,000 to $250,-
000.

Affidavits of six real estate men, introduced in evidence
by the defendants, placed the value of the property at the
present time from $140,000 to $160,000, but none of these
affiants took the witness-stand for cross-examination.

The plaintiff's first witness was E. B. Stephenson, chair-
man of the board of directors of the plaintiff corporation
and receiver of this property, who testified that the build-
ing was two stories and a basement in height, that it was
186 feet by 142 feet, located at the corner of N and Twelfth
streets in Lincoln; that the building was about 45 years
old and in bad condition, being of an old type of construc-
tion, with flat roof; that the basement floor was almost
entirely rotted out, and was mouldy and damp because the
sidewalk was cracked and the water ran through it into
the basement; that the heating plant would have to be re-
placed, and that the elevator was in a dangerous condition;
that the sprinkler system was out of order; that the cornice
around the roof was dangerous and had to be removed;
that after the Herpolsheimer Mercantile Company became
bankrupt the property was leased to J. H. Eller & Com-
pany, who closed up in this location in a few months; that
the receiver has been unable to rent it to any permanent
tenant since that time. The receiver admits that certain
governmental agencies have in the last few years opened
extensive offices in Lincoln, but that he was unable to lease
this property to any governmental agency because of the
physical condition of the building; that the business dis-
trict of the city has steadily grown away from this proper-
ty; that to the south of it there is a large church property,
which does not attract retail trade; that across the street
east there is a one-story building through the entire block,

with little storerooms, changing tenants often and renting for as low as $35 each. To the north of this property there is the blank wall of the Walsh building, and west of that is the King Grocery, which does not attract large numbers of people, for the greater part of its business is done by telephone orders from well-to-do customers. Farther to the east is the Lincoln Theatre building, and traffic experts declare that a theatre does not draw retail trade. Mr. Stephenson testified that in his opinion the property was worth in its present condition only $75,000. Of the other witnesses called by the plaintiff, George M. Christian had been in the real estate business for 24 years in Lincoln; C. W. Roe had been in that business for 15 years; Curtis C. Kimball had lived in Lincoln for 40 years and been in the real estate business for 15 years; Charles A. Herman had been in the real estate business for 22 years in Lincoln. These four experienced real estate men were each subjected to cross-examination, and the fair and reasonable value of this property as fixed by the testimony of these four men gave, when averaged, a value of $85,000. Their evidence disclosed an accurate knowledge of rental values of business properties, together with all of the elements entering into such values.

It is quite evident that the trend of retail trade is away from the location of this property, as is shown by the traffic counts; that this building, to be rented to any advantage, will have to be rebuilt from top to bottom; that there is no more likelihood that a renter could be found in the future than in the past; and that the interest, taxes, and other expenses are piling up each day without any possibility of any returns to the receiver.

After considering all of the evidence in the case, the court has reached the opinion that the mortgaged property in its present condition is worth much less than the amount bid at the sale by the plaintiff.

In *Clark v. Hass*, 129 Neb. 112, 260 N. W. 792, it was held that it was not an abuse of discretion for the trial court to deny an application for a moratorium when it ap-

peared that the amount of the mortgage lien exceeds the value of the lands secured by the mortgage. To the same effect was the holding of this court in *Luikart v. Graf,* 130 Neb. 736, 266 N. W. 641. It was held that, where the applicant has no valuable interest to protect, good cause is thereby shown for a denial of an application for a moratorium. *First Trust Co. v. Stenger,* 130 Neb. 750, 266 N. W. 642. See, also, *Srajhans v. Mares,* 130 Neb. 924, 267 N. W. 82.

However, the defendants insist that, a moratorium stay having once been granted, it cannot now be set aside unless the plaintiff mortgagee can prove that the mortgagor has violated the order. This brings before us for consideration the purpose of such laws.

Moratorium laws are not new. In an article in 46 Harvard Law Review, 1061, we find the moratorium laws of all ages and the various countries discussed, and the statement: "For some 1,400 years western civilization has made use of extraordinary devices for saving the credit structure, devices generically known as moratoria. The moratorium is a postponement of fulfilment of obligations decreed by the state through the medium of the courts or the legislature. Its essence is the application of the sovereign power." But such laws do not apply automatically under certain conditions, but the application depends upon the direction of the court.

This court has said in *First Trust Co. v. Airdale Ranch & Cattle Co.,* 131 Neb. 475, 268 N. W. 362: "Such postponement was not intended to enable the debtor to realize some speculative value out of the real estate securing the debt or to delay indefinitely the day of reckoning where the mortgage indebtedness was excessive."

This court has held repeatedly that, if the amount of mortgage liens on real estate exceeded its value, a moratorium should be denied. *State Life Ins. Co. v. Heffner,* 131 Neb. 700, 269 N. W. 629.

It does not appear to us that, even if a stay has once been granted, the court is thereby foreclosed from a re-

examination into all the facts upon a proper showing, and if it is proper the order for the moratorium can be vacated, as was done in the case at bar.

It is now evident that, after months of effort, a renter cannot be secured; that there is no possibility of the debtors being able to save their property, and that the loss to mortgagee is increasing daily. We hold that under these facts the moratory stay heretofore granted was properly vacated and set aside, and such decree of the district court confirming the sale was right, and is hereby affirmed.

AFFIRMED.